**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**RANDY COOPER,**

       Petitioner,

**v.**                                    **CIVIL ACTION NO.: 5:16cv85
(STAMP)**

**PATRICK MIRANDY, WARDEN,**

       Respondent.

## REPORT AND RECOMMENDATION

### I.    Introduction

On June 15, 2016, *pro se* Petitioner, Randy Cooper, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner is not challenging his conviction or sentence, but is instead challenging decisions by the West Virginia Parole Board ('the Board"). On July 26, 2016, Petitioner was granted leave to proceed *in forma pauperis*. ECF No. 10. On October 17, 2016, Petitioner filed a Motion [ECF No. 13] to Supplement the record with additional exhibits, which was granted by an Order entered on March 6, 2017. ECF No. 16. On March 17, 2017, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not appropriate, and directed Respondent to show cause why the petition should not be granted. ECF No. 18. Following two enlargements of time, Respondent filed his Response together with a Motion for Summary Judgment with Memorandum in Support and exhibits. ECF Nos. 28-30. On June 20, 2017, a *Roseboro* Notice was issued. ECF No. 31. On July 7, 2017, Petitioner filed his Response [ECF No. 33], and on July 20, 2017, Respondent filed a Reply. ECF No. 34.

1

## II.   Background[1]

### A. Criminal Conviction

Petitioner arrived in West Virginia on August 25, 1996, after being paroled in Illinois on a conviction for armed robbery. On August 26, 1996, Petitioner's sister was murdered. Subsequently, Petitioner was arrested and indicted in the Circuit Court of Cabell County for her murder. Petitioner entered into plea negotiations with the State which agreed to allow him to plead guilty to first degree murder with a recommendation of life imprisonment with mercy. On November 4, 1996, Petitioner entered a plea of guilty to first degree murder and was sentenced to life with mercy.

Petitioner did not appeal his conviction to the West Virginia Supreme Court of Appeals ("WVSCA"). However, on July 23, 2002, he did file a Petition for a Writ of Habeas Corpus under the WVSCA's original jurisdiction. The WVSCA summarily refused the petition on November 27, 2002. Thereafter, Petitioner filed at least three habeas petitions in the Southern District of West Virginia challenging his conviction, each of which was denied.[2]

### B. Petitioner's Initial Parole Hearing

On August 10, 2011, Petitioner received his initial parole hearing. ECF No. 29-3. The Parole Decision Summary states that the Board "carefully considered all the factors disclosed in [the] record, considering the positive as well as the negative factors and various official reports including court documents and the results of [Petitioner's]

---

[1] The facts set forth in the section are taken from one of the several habeas proceedings filed by Petitioner in the United States District Court for the Southern District of West Virginia. *See Cooper v. States v. Fox*, 3:10cv1119. Available on PACER.

[2] *See Cooper v. West Virginia*, 3:07-cv-00203; *Cooper v. McBride*, 3:07-cv-00495; and *Cooper v. Fox*, 3:10-cv-01119, all available on PACER.

personal interview." *Id.* at 3. There, the Board found that Petitioner was "not prepared to reintegrate back into society." *Id.* His "interview failed to convince the Board [that his] release would be compatible with – or in the best interest of – society in general." *Id.* As additional factors, the Board stated that Petitioner's crime "was an egregious act of violence that warrants justification for extended parole consideration." *Id.* Finally, the Board found that "the circumstances of [his] crime [indicates] a propensity toward violent and vicious behavior," and that the Board desired Petitioner to use these three years to further his rehabilitation. *Id.* As such, the Board found that he did not deserve "the merciful consideration of parole sooner than [three] years" but that he "could submit information to the Board during this time to request a review before the expiration of this period." *Id.* Petitioner did not challenge this decision by filing any habeas action or otherwise.[3]

**C.  Petitioner's Second Parole Hearing**

On August 26, 2014, Petitioner received his second parole hearing. ECF No. 29-4. During the hearing, the hearing examiner inquired into numerous areas. ECF No. 29-5. The hearing examiner noted that Petitioner was convicted of an armed robbery in 1992. *Id.* at 2. He then asked Petitioner to discuss the underlying facts surrounding the murder of his sister. *Id.* Despite pleading guilty to murdering his sister, he stated that he "was wrongly prosecuted in Cabell courts" and that "I'm not denying any guilt. . . . I did do it or didn't do it." *Id.* at 3. On two occasions, the hearing examiner had to correct Petitioner by referring to earlier statements made by him. *Id.* Petitioner did not dispute

---

[3] Because Petitioner did not appeal this decision or file a writ of habeas corpus with the circuit court, he failed to exhaust his state remedies. Therefore, to the extent he is attempting to challenge this parole denial herein, he is foreclosed from doing so.

his earlier statements. Petitioner further stated that there's "no excuse for what I did, but I can say that on the day I did do it I was on a lot of medication at the time of the crime and I blacked out." *Id.*

The hearing examiner further noted that Petitioner had not had any prison disciplinary charges since 2008, and he had obtained a diploma in vocational training. *Id.* at 4. Whether Petitioner had a home plan was also discussed. *Id.* at 5. When asked if he had anything further to say, Petitioner replied: "Yes, your honor, it's just that I would like to have a chance in West Virginia. I wouldn't cause any problems, and I haven't caused any problems in jail . . . ." *Id.* Although Petitioner indicated that he had not caused any problems in jail, the hearing examiner stated: "Well, yeah, I beg to differ, you are in prison for first degree murder. So you have caused some problems in West Virginia, right?" *Id.* Petitioner agreed. *Id.* At the conclusion of the hearing, the Board found that Petitioner's "crime was a rigorous act of violence that . . . warrants certification for extended parole. It's the Board's decision that your extended incarceration will serve to protect society from possible or future violence by yourself. It's the Board's opinion that you do not deserve merciful consideration of parole sooner than three [] years." *Id.* at 6. Petitioner was informed that he had "the opportunity to submit information to the Board during this time to request a review before the expiration of this period." *Id.*

After the hearing on August 26, 2014, the Board completed a written Parole Decision Summary regarding its decision and its reasoning. ECF No. 29-4. The Board noted that it considered "all the factors disclosed in [the] record, considering the positive as well as the negative factors and various official reports including court documents

and the results of [the] personal interview." *Id.* at 3. Based on this review, it was the Board's "final decision that [Petitioner was] not prepared to reintegrate back into society. [His] interview failed to convince the Board [that his] release on parole would be compatible with – or in the best interest of – society in general." *Id.* The Board further found that Petitioner's "crime was an egregious act of violence that warrants justification for extended parole consideration," and "[Petitioner's] continued incarceration will serve to protect society from possible future violence." *Id.* Finally, the Board concluded that "[i]n the Board's opinion [Petitioner did] not deserve the merciful consideration of parole sooner than 3 years," and he had "the opportunity to submit information to the Board during this time to request a review before the expiration of this period." *Id.*

## D.  State Habeas

On November 18, 2014, Petitioner filed a petition for writ of habeas corpus in the Circuit Court of Kanawha County. ECF No. 29-6. In the petition, he alleged four claims: (1) the Board violated ex post facto by ordering two, three year parole rehearing dates; (2) the Board failed to release him after completion of rehabilitation programs; (3) the Board improperly denied him parole based on his physical disability; and (4) W. Va. Code Section 62-12-13(a)(5) is unconstitutional. On June 16, 2015, without a hearing, the circuit court dismissed the petition "because the petition has failed to demonstrate to this Court's satisfaction that the Petitioner is entitled to relief." *Id.* at 3.

## E.  Appeal of State Habeas

Petitioner filed a Notice of Appeal in the WVSCA on July 6, 2015. ECF No. 29-8. There, he stated that the "Board has discriminated against petitioner in denying me parole in August 2014 based upon my physical disability of having the Human

Immunodeficiency Virus (HIV) and violated the American with Disability Act of 1990, title

42 U.S.C. 12182 and PA DOC v. Yeskey, 524 U.S. 206 (1998)." *Id.* at 7. He filed his

brief on September 8, 2015, in which he raised two assignments of error:

> 1. The Circuit Court erred in my case by not looking at the evidence that the board relied upon in denying the petitioner parole.
>
> 2. The Circuit Court erred by not looking at the information regarding my HIV medical Condition, and information that other inmates were encouraged to write about me by state officials.

ECF No. 29-9 at 6.[4] Respondent filed his reply brief on October 5, 2015. ECF No.

29-10. The WVSCA affirmed the circuit court's decision by Memorandum Decision

on April 15, 2016. ECF No. 29-1. In its decision, the Court found that *State ex rel.*

*Carper v. W. Va. Parole Board*, 203 W. Va. 583, 509 S.E.2d 864 (1998) applied to

Petitioner's case, and the Board "complied with *Carper* by informing [P]etitioner that

he had the opportunity to submit information to the [B]oard and to request a review

before the expiration of the three year period." *Id.* at 4. The Court further found that

the Board made appropriate reasoning on the record as to why an extended hearing

date was necessary and not to the detriment of Petitioner. *Id.* In addition, the Court

found that "Petitioner's positive HIV status played no role in the [B]oard's decision.

*Id.* On May 16, 2016, Petitioner filed a Petition for rehearing [ECF No. 29-11], but the

WVSCA refused the Petition. ECF No. 29-12.

---

[4] The undersigned notes that the issues presented to the WVSCA are actually alleged errors on the part of the circuit court rather than errors by the Board. Therefore, Petitioner has failed to properly exhaust his claims. However, it will serve the best interest of judicial economy not to further belabor the exhaustion issue, and instead exercise the discretion afforded by Section 2254, as amended by ADEPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be decided on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### III.    The Pleadings

#### A.  The Petition

Petitioner raises four points of contention in support of his petition but does not indicate what relief he seeks:

1.   The retroactive application of W. Va. Code Section 62-12-13 (a)(5) (recodified at W. Va. Code Section 62-12-13 (e)) violates the ex post facto provisions of Article 1, Section 10 of the United States Constitution and Article III, Section 3 of the West Virginia Constitution;

2.   Petitioner is entitled to be released on parole pursuant to W. Va. Code Sections 62-12-1 through 29 and the Due Process Clause of the U.S. Constitution because he successfully completed the rehabilitation programs ordered by the Parole Board at the conclusion of his 2011 Parole Board Hearing;

3.   The Parole Board denied him parole in August 2014 based on his positive HIV status which was a discriminatory action in violation of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12182;

4.   W. Va. Code Section 62-12-13 (a)(5) is unconstitutional because it subjects him to an increase in the punishment he would otherwise be required to serve on his life with mercy term of confinement.

#### B.  Respondent's Motion for Summary Judgment

First, Respondent argues that Petitioner's first and fourth claims are time barred under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), which

establishes a one-year limitation period to file any federal habeas corpus petition. More specifically, Respondent contends that Petitioner's first ground for relief is that the Board violated ex post facto laws by ordering two, three year parole rehearing dates. Respondent notes that Petitioner's first parole hearing was in August 2011, and Petitioner never filed any state court proceedings until 2015. Therefore, Respondent contends that any claims arising from his August 2011 denial are well beyond the one-year limitation period and should be dismissed with prejudice as time barred.[5] Respondent also argues that Petitioner's Fourth ground that W. Va. Code Section 62-12-13(a)(5) is unconstitutional is time barred. Respondent maintains that the factual predicate for this claim is really the statutory change of the frequency of parole hearings to those serving life sentences. Accordingly, Respondent argues that Petitioner's claim began to run the day after his initial parole denial because W. Va. Code Section 62-12-13 was applied when the Board set his next hearing date for three years. Respondent maintains that it was at this time, in August 2011, when Petitioner could have (and should have) learned of the factual basis for his claim that the state statute was unconstitutional. Because there was no possible tolling event until Petitioner filed his state habeas petition after the denial of his second habeas petition on November 18, 2014, Respondent argues that this claim is time barred.[6]

Despite arguing untimeliness, Respondent addresses the merits of Petitioner's first and fourth claims and argues that W. Va. Code Section 62-12-13(e) is constitutional and does not violate ex post facto principles. In addition, Respondent argues that Petitioner's second ground that he is entitled to be released on parole pursuant to the

---

[5] *See supra* Note 3.

[6] The undersigned believes that this interpretation is too restrictive for a *pro se* litigant.

Due Process Clause of the U.S. Constitution is without merit because there is no constitutional right to be released on parole. Finally, Respondent argues Petitioner's medical condition was not considered as a factor in his denial of parole as Petitioner contends in his third ground for relief.

**C. Petitioner's Response to the State's Motion for Summary Judgment**

In his Response, Petitioner argues a number of issues which fall outside the four corners of his pending Petition. For example, Petitioner argues or intimates that:

1. He was wrongfully prosecuted in Cabell County, West Virginia;

2. He was not provided an adequate pre-trial competency determination;

3. The January 29, 1997, police report contained heresay and other unreliable information; and

4. His rights under the Equal Protection Clause of the U.S. Constitution were violated.

Petitioner also discusses his personal background, his struggles with the HIV virus and his good behavior while incarcerated. Petitioner argues further in support of his contention that the application of W. Va. Code Section 62-12-13(e), applied retroactively to his sentencing, violates both federal and state ex post facto laws because it creates "a significant risk of increased punishment."

Furthermore, Petitioner argues that the WVSCA's decision in *Carper* violates the separation doctrine as it relates to the legislative and judicial branches of government. According to Petitioner, the decision in *Carper* effectively (and unconstitutionally) re-wrote section 62-12-13(e) by adding vague procedural safeguards in order to permit the statute to pass constitutional muster.

Finally, Petitioner argues that he was wrongly denied parole based, at least in part, on the basis of his HIV condition, in violation of the ADA.

## D.  **Respondent's Reply**

In his Reply, Respondent first points out, generally, that Petitioner's claims for federal habeas relief are both procedurally and substantively flawed. Specifically, Respondent argues that Petitioners claims grounded on his 2011 probation proceedings are time barred by the AEDPA's one-year statute of limitations.

Respondent's Reply also argues that Petitioner's Response fails to assert a single, credible reason why his petition should not be denied. Respondent points out that many of the claims and arguments contained in the Response are based on Petitioner's failure to exhaust state remedies or irrelevant.

In addition, Respondent asserts that there is no record evidence that Petitioner's parole denials were based in any way on his HIV status. Lastly, Respondent addresses Petitioner's equal protection claim and argues that Petitioner has failed to establish that he has been the object of purposeful discrimination, which is an essential element of that claim.

## IV.    **Standard Of Review**

Title 28, Section 2254, as amended by the AEDPA, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a section 2254 petition, the district court applies the standards set forth in section 2254(d), which provides that the habeas petition of a person in state custody "shall not be granted with

respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

> (1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §§ 2254(d)(1), (2). Moreover, the factual determinations by the state courts are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing a petition for habeas relief, the Federal Court uses a "highly deferential lens." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of section 2254)(1)(d) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 US at 405) (cleaned up). A habeas writ may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300-

01 (cleaned up). Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under the standard set forth in 28 U.S.C. §§ 2254(d)(1), (2) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Williams*, 529 US at 365.

In the instant case, the Respondent has moved for summary judgment. Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller & Mary K Kane, *Federal Practice and Procedure* § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition only

genuine disputes over material facts "will properly preclude the entry of summary judgment." *Anderson*, 477 US at 248; *JFK Holding Co. v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cty. of Prince William*, 249 F. 3d 295, 299 (4th Cir. 2001) (citing *Anderson*, 477 US at 248).

Motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990). Nevertheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson*, 477 US at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted," *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50). With these standards in mind, the undersigned considers the four grounds raised by Petitioner and will consider grounds one and four together, for the sake of clarity.

## V.   Analysis

### A. Ex Post Facto and Constitutionality of W. Va. Code § 62-12-13(e)

The U.S. Constitution prohibits the states from passing any "ex post facto Law." U.S. Const., Art. I § 10, cl. 1. Two critical elements must be present for a law to fall

within the ex post facto prohibition: "[F]irst, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (cleaned up). Therefore, one function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for crime after its commission. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (citing *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). Retroactive changes in laws governing parole or prisoners in some instances may violate this rule. *See Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997) (citing *Weaver v. Graham*, 450 U.S. 24, 32 (1981)); *California Dept. of Corr. v. Morales*, 514 U.S. 499, 508 (1995).

However, the Supreme Court has rejected the argument "that the Ex Post Facto Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Morales*, 514 US at 508. The Ex Post Facto Clause was never intended to result in judicial "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures . . . ." *Id.* Instead, the Court has consistently held that "the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition *must* be a matter of degree." *Id.* at 509 (emphasis in original) (cleaned up). If the amendment produces only a "speculative and attenuated possibility" of increasing an inmate's punishment, then there is no ex post facto violation. *Id.* A court should look at the effect of the statute on the "quantum of punishment" to determine whether an amendment offends the Ex Post Facto Clause. *Lynce*, 519 U.S. at 444-45.

14

In addition, the United States Court of Appeals for the Fourth Circuit has held that under the U.S. Constitution, the Ex Post Facto Clause is not violated simply because a retroactive reduction in parole review frequency would "necessarily eliminate an opportunity for early release." *Roller v. Gunn*, 107 F.3d 227, 235 (4th Cir. 1997). Rather, the inquiry a court must make is whether a retroactive reduction in parole review frequency creates "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Roller*, 107 F.3d at 235 (quoting *Morales*, 514 U.S. at 509).

Here, Petitioner was convicted of first degree murder on November 4, 1996. At the time of his conviction, all state prisoners were entitled to annual parole consideration after becoming eligible for parole. In 1997, the West Virginia Legislature amended the parole statute to permit the Board to schedule (or "set-off") a prisoner's parole interview for up to three years for persons serving life with mercy sentences. The relevant portion of the statute now provides:

> If, upon consideration, parole is denied, the board shall promptly notify the inmate of the denial. The board shall, at the time of denial, notify the inmate of the month and year he or she may apply for reconsideration and review. The board shall at least once a year reconsider and review the case of every inmate who was denied parole and who is still eligible. *Provided*, *That the board may reconsider and review parole eligibility any time within three years following the denial of parole of an inmate serving a life sentence with the possibility of parole.*

W. Va. Code § 62-12-13(a)(5), recodified at W. Va. Code § 62-12-13(e) (emphasis added). Subsequently, the parole board began to apply this statute to all inmates regardless of when they were sentenced.

Approximately one year after the amended statute was codified, the WVSCA considered a constitutional challenge to the provision and held that:

> Under the ex post facto clause of the West Virginia
> Constitution, Article III, Section 4, the 1997 amendment to
> W.Va. Code, 62-12-13(a)(5) [1997] that allows parole review
> hearings to be conducted within a period of up to 3 years
> following the denial of parole for prisoners serving sentences
> of life imprisonment with the possibility of parole may be
> applied retroactively to prisoners whose relevant offenses
> occurred prior to the effective date of the statutory
> amendment.

Syl. Pt. 2, *State ex rel. Carper v. W. Va. Parole Bd.*, 203 W. Va. 583, 585, 509

S.E.2d 864, 866 (1998).

> To pass constitutional muster under the ex post facto clause
> of West Virginia Constitution, Article III, Section 4, the
> provisions of W.Va. Code, 62-12-13(a)(5) [1997] allowing up
> to 3 years between parole reviews for prisoners serving
> terms of life imprisonment with the possibility of parole must
> be applied on a case-by-case basis to prisoner whose
> offenses occurred at a time when the law prescribed annual
> parole reviews. The Board of Parole may only extend the
> period between parole review hearings for such prisoners
> beyond 1 year if the Board has made a case-specific
> individualized determination with reasoned findings on the
> record showing why there will be no detriment or
> disadvantage to the prisoner from such an extension.
> Additionally, due process requires that such a prisoner
> receiving a review period of more than 1 year must be
> afforded the opportunity to submit information for the Board's
> consideration during any extended period requesting that a
> review be granted before the expiration of the extended
> period.

*Id.* at Syl. Pt. 3.

When viewed within the context of West Virginia's parole regulations, and the

federal case law cited herein, the statute at issue in this case does not facially increase

the likelihood of punishment. First, it does not change the length of the sentence in any

way. Second, it does not affect the timing of the initial parole consideration, only

subsequent parole consideration dates. Third, the 1997 amendment does not deny the

Board the ability to review and/or grant parole at any time after parole is initially denied

16

for any inmate, including Petitioner, serving a life sentence. *See* W. Va. Code § 62-12-13(e) ("[T]he [B]oard may reconsider and review parole eligibility *any time* within three years following the denial of parole of an inmate serving a life sentence with the possibility of parole." (emphasis added)). Moreover, pursuant to the decision entered by the WVSCA in *Carper*, the Board must demonstrate that its decision to deny an inmate parole review for longer than one year will not work to the detriment or disadvantage of the inmate. *Carper*, 203 W. Va. at 590, 509 S.E.2d at 871. Taken together, these factors indicate that West Virginia inmates are not subject to a longer punishment because of the amended statute. The amendment simply permits less frequent parole reconsideration dates in situations in which the Board determines that more frequent consideration is unnecessary. Accordingly, the amended statute is constitutional and does not violate the Ex Post Facto Clause.

The undersigned notes that within his allegation regarding an ex post facto violation, Petitioner alleges that the Board did not comply with the requirements of *Carper*. The undersigned acknowledges that in *Carper*, the WVSCA held that "W. Va. Code, 62-12-13(a)(5) [1977] allowing up to [three] years between parole reviews for prisoners serving terms of life imprisonment with the possibility of parole must be applied on a case-by-case basis to prisoners whose offenses occurred at a time when the law prescribed annual parole reviews." Syl. Pt. 3, in part, *Carper*, 203 W. Va. 6853, 509 S.E.2d 864.

This claim rests solely upon alleged violation of state law. However, this Court has previously found that claims of state law violations are not claims cognizable by federal courts. *Mayle v. W. Va. Parole Bd.*, No. 1:10cv63, 2010 WL 3584443, at *2 n.2

17

(N.D. W. Va. Aug. 17, 2010), *report and recommendation adopted*, No. 1:10cv63, 2010 WL 3584465 (N.D. W. Va. Sept. 13, 2010); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (violations of state law do not state claims cognizable by federal courts); *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) ("[W]hen a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review.").

## B. **Petitioner is not Entitled to be Released on Parole**

Petitioner claims that he is entitled to be released on parole pursuant to the Due Process Clause of the U.S. Constitution. ECF No. 1 at 11-12. In support of this claim, Petitioner states that he successfully completed all the rehabilitation programs ordered by the West Virginia State Parole Board. *Id.* Petitioner appears to be referring to his first parole hearing which was conducted on August 10, 2011.[7]

There is no constitutional right to be released on parole. Rather, a state's parole system must simply provide appropriate avenues for review pursuant to federal due process. "If the state has a parole system, the parole procedures must meet the due process requirements of the Constitution" and "if a liberty interest exists, the petitioner is only entitled to minimal procedure." *Smith v. Liller*, 314 F. Supp. 2d 623, 629(N.D. W. Va. 2004) (citing *Greenholtz*, 442 U.S. at 8; *Vann v. Angelone,* 73 F.3d 519, 522 (4th Cir. 1996)). In sum, Petitioner only has a right that the Board consider him for parole (if eligible) and decide his case in a manner that is not arbitrary and capricious.

---

[7] The only mention of programs in his first parole decision is an indication that Petitioner's record of participation in educational, vocational, and therapeutic programs recommended to him by prison staff was a positive rational for the Board's decision. ECF No. 29-3 at 2. In addition, the decision indicates that "[i]t is the Board's desire that an additional 3 years time will further add to your rehabilitation." *Id.* at 3.

18

Petitioner makes no allegation that the Board acted in an arbitrary and capricious fashion. Instead, he argues that he is entitled to parole because he completed certain rehabilitation programs while in custody. No matter how liberally construed, this does not state a claim that the Board abused its discretion by acting in an arbitrary and capricious fashion. Furthermore, the record demonstrates that the Board interviewed Petitioner, reviewed his file, and considered both the positive and negative factors, including his completion of rehabilitation programs. The Board then came to the conclusion that Petitioner was not an appropriate candidate for parole at either of his hearings.

"A reasonable entitlement to due process is not created merely because a State provides for the possibility of parole, such possibility providing no more than a mere hope that the benefit will be obtained." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 2 (1979). "Whether or not a liberty interest exists, federal courts must defer to state agencies applying state laws and thus their oversight of state parole proceedings has been extremely limited . . . Due process requires only that the 'parole board furnish the prisoner a statement of its reasons for denial of parole.'" *Carr v. McBride*, No. 2:02cv1418, 2005 WL 1009628, at *2 (S.D. W. Va. Apr. 29, 2005) (quoting *Franklin v. Shields*, 569 F.2d 784, 797 (4th Cir. 1978)). Accordingly, Petitioner cannot show that the denial of parole and the affirmation of that denial by the state court resulted in his decision that was contrary to, or involved an unreasonable application of clearly establish Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.

## C. **Petitioner's Medical Condition**

Petitioner claims that the board discriminated against him when it denied his request for parole in August 2014, based upon his physical disability of having the Human Immunodeficiency Virus ("HIV") and that the denial violated the ADA. ECF No. 1 at 13-14. In support of this claim, Petitioner states that prior to his parole hearing in August 2014 he attended a conference with two counselors at Huttonsville Correction Center. *Id.* He further claims that during the conference he was questioned exclusively on his HIV medical condition. *Id.* Finally, he asserts that at his August 2014, parole hearing, the Board "wrongly, illegally, and unconstitutionally considered and used" his HIV medical condition to deny him parole. *Id.* at 11-12.

The ADA prohibits a public entity from discriminating against a qualified individual on the basis of disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Furthermore, the ADA applies to state prisons and parole decisions. *Pa. Dep't of Corr. v. Jeskey*, 524 U.S. 206, 208-13 (1998). However, the ADA "does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability." *Thompson*, 295 F.3d at 890 n. 4. Therefore, a "person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether the individual is qualified for parole." *Id.* Accordingly, federal courts have held that there are circumstances where a parole board may consider an inmate's physical disability in denying parole and the ADA is not violated. *See Cheever v. Nooth*, 2:10-CV-01181, 2012 WL 1114306, at *3-4 (D. Or. Feb. 1, 2012).

20

However, in the instant case, there is absolutely no evidence that the Board considered Petitioner's HIV status when it denied him parole in August 2014. In fact, the transcript of the parole interview indicates Petitioner's HIV status was not discussed or even mentioned. While the interview transcript and parole decision summary show that there were several factors that led to the Board's denial of parole, his medical history was not one of them.

## VI.    Recommendation

For the reasons set forth above, the undersigned recommends that Respondent's Motion [ECF No. 29] for Summary Judgment be **GRANTED;** Petitioner's Motion [ECF No. 38] for Information to be Expunged[8] be **DENIED;** Petitioner's Motion [ECF No. 39] to Appoint Count be **DENIED**; and the Petition [ECF No.1] be **DISMISSED WITH PREJUDICE**. Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

---

[8] In this motion, Petitioner indicates that he was denied parole again in August 2017. He maintains that the denial was due to false information in his prison file. It appears that the information he believes is contained within his file and is false is a "22-year-old police report." ECF No. 38. Petitioner requests that this Court expunge said prejudicial information. Clearly, that is not relief that can be granted in this proceeding.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. Further, the Clerk is **DIRECTED** to provide a copy of this Report and Recommendation to counsel of record via electronic means. Furthermore, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

Respectfully submitted this 1st day of February, 2018.


ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE